UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HOWARD E. BLASINGAME,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL[*], Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:16-cv-02203-GMN-BNW<br><br>**REPORT AND RECOMMENDATION** |

This case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Howard E. Blasingame's ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act ("Act"). The court has reviewed Plaintiff's motion for reversal or remand (ECF No. 18), filed May 1, 2017, and the Commissioner's response and cross-motion to affirm (ECF Nos. 22 and 24), filed June 7, 2017. Plaintiff did not file a reply. This matter was referred to the undersigned magistrate judge on May 2, 2019 for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**I.   BACKGROUND**

On October 13, 2012, Plaintiff applied for disability insurance benefits under Title II of the Act, alleging an onset date of March 14, 2012. AR[1] 155-56. Plaintiff's claim was denied initially on May 31, 2013, and on reconsideration on October 7, 2013. AR 72-75, 77-82. A hearing was held before an Administrative Law Judge ("ALJ") on February 6, 2015, where the ALJ heard testimony from Plaintiff and a vocational expert. AR 36-61. On February 25, 2015,

---

[*] Nancy A. Berryhill has been substituted for her predecessor in office, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 11)).

the ALJ issued a decision finding Plaintiff was not disabled. AR 20-29. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on August 3, 2016. AR 1-6. Plaintiff, on September 19, 2016, commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* Compl. (ECF No. 1)).

## II.   DISCUSSION

### 1.   Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) reads: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner *de novo*. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); see also SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 25-29. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 14, 2012 through the date of the decision. AR 25. At step two, the ALJ found that Plaintiff had a medically determinable "severe" impairment of degenerative disc disease of the lumbar and cervical spine, with history of lumbar fusion. *Id.* The ALJ found Plaintiff's mental impairment of a mood disorder to be "non-severe."[3] *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26. At step four, the ALJ found Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except for any work involving standing or walking for more than two hours in an eight hour workday; any work involving climbing ladders, ropes, or scaffolds; any work involving more than occasional climbing ramps or stairs or more than occasional stooping, kneeling, crouching, or crawling; and any work involving concentrated exposure to vibrations or hazards such as machinery or heights. *Id.* The ALJ found Plaintiff can perform his past relevant work as a car inspector, title clerk, and office clerk. AR 29. Accordingly, the ALJ concluded Plaintiff was not under a disability at any time from March 14, 2012 through the date of the decision. *Id.*

//
//
//

---

[3] At "each level in the administrative review process," the SSA must follow a special technique to evaluate mental impairments at steps two and three. 20 C.F.R. § 404.1520a. The special technique requires the ALJ to substantiate the presence of a medically determinable impairment using pertinent symptoms, signs, and laboratory findings, and then to rate the degree of functional limitation that results from the mental impairment in four broad categories: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(b)-(c). If the degree of limitation in the first three categories is none or mild, and the claimant has no episodes of decompensation of extended duration, then the claimant's mental impairment is not severe. *Id.* § 404.1520a(d)(1). Here, the ALJ found that Plaintiff's mental impairment causes "no more than a mild limitation to perform activities of daily living, and no limitations in his ability to engage in social functioning and to perform activities requiring concentration, persistence or pace." AR 26. The ALJ also found that Plaintiff has never had any episodes of mental decompensation. *Id.*

### 3. Analysis

#### a. Whether substantial evidence supports the ALJ's residual functional capacity findings

The ALJ found Plaintiff was not disabled because he had the residual functional capacity ("RFC")[4] to perform past relevant work as a car inspector, title clerk, and office clerk. AR 29. Specifically, the ALJ found Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except for any work involving standing or walking for more than two hours in an eight-hour workday; any work involving climbing ladders, ropes, or scaffolds; any work involving more than occasional climbing ramps or stairs or more than occasional stooping, kneeling, crouching, or crawling; and any work involving concentrated exposure to vibrations or hazards such as machinery or heights. *Id.* Plaintiff argues the new evidence submitted to the Appeals Council after the ALJ decision, including a RFC evaluation from Plaintiff's treating physician Dr. Alexander Imas, provides material and substantial evidence that Plaintiff is unable to engage in substantial gainful activity, and, therefore, the ALJ's RFC finding is not supported by substantial evidence. The Commissioner responds the ALJ's RFC finding was supported by substantial evidence even when considering the additional evidence submitted into the record, noting an ALJ, not a physician, determines a plaintiff's RFC. Specifically, the Commissioner argues the new evidence submitted from Dr. Imas' "checkbox assessment of disability" does "not undermine the substantial evidence supporting the ALJ's decision" given that the ALJ considered Dr. Imas' treatment notes. In her decision, the ALJ references Dr. Imas only once (i.e., when discussing a sacroiliac steroid joint injection Dr. Imas performed on Plaintiff for "low back pain, pain in the thigh, hip pain, and pain in the groin"). AR 27. The ALJ also notes in her decision that the record lacks a treating physician's opinion, writing, "Notably, there is no opinion in the record from an actual treating physician regarding the claimant's physical capacities." AR 28.

When seeking review of an unfavorable ALJ decision, a plaintiff is permitted to submit new evidence to the Appeals Council, 20 C.F.R. §§ 404.900(b) and 416.1400(b), without showing

---

[4] RFC refers to "what [one] can still do despite [one's] limitations." 20 C.F.R. § 416.945(a)(1).

1  good cause.[5]  *Brewes v. Commissioner of Social Sec. Admin*, 682 F.3d 1157, 1162 (9th Cir. 2012).
2  Even though the Appeals Council is required to consider the evidence the claimant has submitted,
3  it also has the explicit authority to reject the evidence.  *Id.* §§ 404.970(b) and 416.1470(b).  If the
4  new evidence Plaintiff submits to the Appeals Council becomes part of the administrative record
5  (i.e., it is not rejected by the Appeals Council), the Ninth Circuit has held the reviewing court will
6  consider the new evidence in determining whether substantial evidence supports the denial of
7  benefits.  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also Gardner v. Berryhill*,
8  856 F.3d 652, 657 (9th Cir. 2017) (noting the district court was correct in remanding Plaintiff's
9  case so the ALJ could decide the impact of new evidence submitted to the Appeals Council); *cf.*
10 *Denham v. Astrue*, 494 F. App'x 813, 815-16 (9th Cir. 2012) (finding claimant "did not present
11 medical evidence indicating functional limitations more severe than the RFC found by the ALJ"
12 when considering "both the evidence before the ALJ and the additional evidence submitted only
13 to the Appeals Council").

14      A plaintiff's RFC is "the most" he "can still do despite" physical and mental limitations
15 that affect his ability to work.  20 C.F.R. § 416.945(a)(1).  A RFC determination is, according to
16 the Social Security Regulations, a "medical assessment."  Id. § 404.1545(a), 416.945(a).  It is the
17 ALJ who "is responsible for translating and incorporating clinical findings into a succinct RFC."
18 *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  An "ALJ's assessment
19 of a claimant adequately captures restrictions related to concentration, persistence, or pace where
20 the assessment is consistent with restrictions identified in the medical testimony."  *Stubbs-
21 Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  In other words, the ALJ must develop
22 a plaintiff's medical record before determining his RFC.  Of note, to the extent the evidence could
23 be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the
24 evidence.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).

---

[5] The Commissioner cites to *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001), a 2001 case holding that a plaintiff is required to show good cause when submitting new evidence to the Appeals Council.  The Commissioner does, however, also cite to *Brewes*, noting in its brief that the *Brewes* court "declined to apply the good cause and materiality requirements . . . ."

An ALJ relies on various medical and non-sources in developing a plaintiff's medical record. Of the acceptable medical sources, a treating doctor's opinion is given deference because he "'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Id.* at 600 (quoting *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987)). The opinions of examining and non-examining doctors are "afforded less weight" than the opinions of treating doctors. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). In fact, the ALJ is required to give a treating doctor's opinion "its 'greatest weight.'" *Gardner*, 856 F.3d at 657 (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Specifically, the medical opinion of a claimant's treating doctor is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating doctor's opinion is not controlling, it is weighted according to factors such as length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. *Id*. § 404.1527(c)(2)-(6). Greater weight also is given to the "opinion of a specialist about medical issues related to his or her area of specialty." *Id*. § 404.1527(c)(5).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may "only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayless v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ "can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen,* 881 F.3d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Brown*, 799 F.2d 1403, 1408 (9th Cir. 1986)). For an ALJ to "say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). When a treating and examining doctor rely

on the same clinical findings, but differ only in conclusions, the examining doctor's conclusions are not substantial evidence. *Orn,* 495 F.3d at 632.

An ALJ is not entitled to reject a treating doctor's findings "even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." *Trevizo v. Berryhill,* 861 F.3d 664, 683 n.4 (9th Cir. 2017). Finally, the Ninth Circuit has a "general rule" that "where the 'critical portions' of a treating physician's discredited opinion were presented for the first time to the Appeals Council, '[t]he appropriate remedy . . . is to remand th[e] case to the ALJ' to consider the evidence." *Gardner*, 856 F.3d at 657-58 (quoting *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir. 2000)).

Here, as discussed below, the new evidence Plaintiff submitted to the Appeals Council following the ALJ decision is material in determining whether there is substantial evidence to support the current RFC finding. Specifically, when determining Plaintiff's RFC, the ALJ did not have access to the opinion of treating physician Dr. Imas, particularly the doctor's RFC evaluation that enumerated Plaintiff's work limitations. As such, the ALJ did not have access to the "critical portions" of Dr. Imas' opinion. Similarly, the ALJ did not have the opportunity to then fully develop Plaintiff's medical record.

The ALJ found Plaintiff not disabled because he had the residual functional capacity ("RFC")[6] to perform past relevant work as a car inspector, title clerk, and office clerk. AR 29. Plaintiff requested the Appeals Council to review his case and submitted to that body three new exhibits[7], including treatment records from Dynamic Pain Rehabilitation dated February 9, 2015, to April 13, 2015, Exhibit 19F, and a treating source opinion from Alexander Imas, M.D. dated May 19, 2015, Exhibit 20F. AR 5. The Appeals Council entered these reports into the administrative record, but denied review, thereby making the ALJ's written decision the final

---

[6] RFC refers to "what [one] can still do despite [one's] limitations." 20 C.F.R. § 416.945(a)(1).
[7] The third exhibit the Appeals Council entered into the record (i.e., Exhibit 23E) is the representative brief signed by Steven Rosales and is dated July 13, 2015. AR 5.

decision subject to judicial review. AR 2, 5.[8]  The court considers both the ALJ's decision and the additional materials submitted to the Appeals Council.  Of note, the Commissioner does not contend the Appeals Council should not have considered the additional reports submitted after the hearing, or that the court should not consider these reports on appeal.  That said, the Commissioner argues Plaintiff could have submitted Dr. Imas' opinion (i.e., Exhibit 20F) before the ALJ hearing on February 6, 2019; Dr. Imas' opinion was dated May 19, 2015.  AR 567.  This court will therefore review the new evidence Plaintiff submitted to the Appeals Council.  *See Ramirez*, 8 F.3d at 1452.

The ALJ considered evidence, including (1) the opinion of Plaintiff's physician's assistant, Dr. Max Carter, Ph.D., AR 27-28, (2) the opinion of examining consultative psychologist Dr. Bonnie Winkleman, Psy.D., AR 27-28, and (3) the opinion of non-examining State agency physician, Dr. Navdeep S. Dhaliwal, M.D., AR 28.  Contrary to what both Plaintiff and the Commissioner argue, the ALJ does not cite to or discuss the opinion of non-examining State agency physician, Dr. Nalina Tella, M.D.  Dr. Tella's opinion, however, is in the record, AR 390, 395, 396.  Further, the ALJ had not previously considered the merits of Dr. Imas' opinion except to state that Dr. Imas performed a sacroiliac steroid joint injection on Plaintiff at Dynamic Pain Rehabilitation ("DPR") and that all of Plaintiff's subsequent treatment at DPR was provided by physician's assistant Max Carter whose qualifications are listed as PA-C.  AR 27.  The ALJ also notes that apart from performing the September 2011 steroid joint injection, Dr. Imas did not treat Plaintiff through January 2015 "as shown in the progress notes . . . ." *Id.* Further, the ALJ finds that "there is no opinion in the record from an actual treating physician regarding the claimant's physical capacities." AR 28.  Plaintiff argues this ALJ finding is "voided" in light of the new evidence submitted to the Appeals Council.  This court agrees.

The record reflects that Dr. Imas treated Plaintiff on-and-off on multiple occasions between September 2011 and May 2015; supervised Max Carter, the physician's assistant who

---

[8] In its decision, the Appeals Council writes, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council." AR 2.

treated Plaintiff; and approved Dr. Carter's prescriptions of Plaintiff's medications[9]. For example, Plaintiff self-reported to Dr. Imas on November 3, 2014 he could walk "up to 1 blocks [sic] before having to stop due to pain," he could sit for "5 minutes before having to get up and move about," and he was involved in a motor vehicle accident on October 20, 2014. AR 480. Dr. Imas subsequently referred Plaintiff for imaging studies at Las Vegas Radiology on November 20, 2014 and November 25, 2014, AR 397-399, and performed lumbar trigger point injections on Plaintiff on November 20, 2014. AR 474. On December 2, 2014, Dr. Imas noted Plaintiff's pain level was at a 7 and "suspect[ed] Plaintiff suffered] from a right big toe sprain, mid and lower back strain." AR 472. Moreover, on December 11, 2014, Dr. Imas noted that Plaintiff has "a history of arthritis, numbness/tingling, back pain, and neck pain" though he had normal "lumbar strength and tone." AR 467. During the same visit, Dr. Imas also noted that Plaintiff had a bilaterally positive Patrick's Test. *Id*. Subsequently, on December 30, 2014, Dr. Imas diagnosed Plaintiff with sacroiliitis bilaterally, cervical muscle spasms, lumbosacral muscle spasms, myofascial pain syndrome, and lumbar radiculopathy. AR 464. On January 27, 2015, Dr. Imas performed cervical trigger point injections on Plaintiff. AR 461. Further, Dr. Imas completed a Residual Function Capacity Questionnaire on May 19, 2015 in which he opined that Plaintiff, during an eight-hour day, could sit and walk for fewer than two hours and stand for about two hours, citing limitations stemming from "back pain, left leg and arm pain." AR 566.

In sum, treating physician Dr. Imas and his physician's assistant, Dr. Carter, treated Plaintiff on multiple occasions whereas consultative examiner Dr. Winkleman evaluated Plaintiff once and consultative examiner Dr. Dhaliwal never examined Plaintiff. The ALJ rejected Dr. Carter's opinion because it lacked objective support and because Plaintiff did not have a treating physician opinion. In light of the ALJ's finding, the opinion provided by treating physician Dr. Imas to the Appeals Council following the ALJ decision, if credited, coupled with objective evidence such as Plaintiff's most recent imaging studies, including his January 29, 2015, cervical spine MRI noting an annular fissure at C5-C7 in addition to degenerative change, AR 532-33,

---

[9] On January 20, 2014, Dr. Carter noted that he informed Plaintiff that he would no longer receive an Adderall prescription because he was following Dr. Imas' directive. AR 515.

could support Plaintiff's claim that he is disabled. *Stout*, 454 F.3d at 1056 (finding an error is non-harmless unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination.") Accordingly, the court holds that the case be remanded for rehearing so the ALJ can consider the new evidence Plaintiff submitted to the Appeals Council after the ALJ hearing and decision and complete a new RFC analysis.

### b. Whether the ALJ properly evaluated Plaintiff's pain and symptom testimony

The ALJ found that Plaintiff's pain and symptom testimony was not supported by objective medical evidence. AR 27-29. Plaintiff argues the ALJ "improperly rejected" Plaintiff's pain and symptom testimony by not taking into consideration the record as a whole, including imaging studies performed after the consultative State agency doctor submitted his findings. The Commissioner responds the ALJ did not "arbitrarily discredit" Plaintiff's complaints, but instead provided "specific and well-supported reasons" for not finding Plaintiff's complaints fully credible.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.[10] First, the ALJ "must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). In fact, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) *(citing Morgan,* 169 F.3d at 600). Plaintiff, however, is not required "to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [Plaintiff] need only show that it could

---

[10] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' .... [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). The "clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d at 947, 958-59.

A court reviews an ALJ's rejection of Plaintiff's testimony for "'specific, clear and convincing reasons.'" *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). Identifying inconsistencies between a claimant's testimony and his reported activities is "a valid reason for an adverse credibility determination." *Id.* at 1137-38 (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789 792 (9th Cir. 1997). However, the ALJ cannot rely on "general findings," and must instead "'identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). Further, the court is constrained to affirming the ALJ decision on a ground that the ALJ invoked in making her decision. *See Orn*, 495 F.3d at 630;

1  *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006). The court, however,
2  cannot affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.
3  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).
4        Here**,** after the ALJ discusses the residual functional capacity ("RFC"), she writes in her
5  decision, "After careful consideration of the evidence, the undersigned finds that the claimant's
6  medically determinable impairments could reasonably be expected to cause the alleged
7  symptoms; however, the claimant's statements concerning the intensity, persistence and limiting
8  effects of these symptoms are not entirely credible for the reasons explained in this decision."
9  AR 29. These reasons include that (1) Plaintiff's daily activities are inconsistent with his self-
10 reports, and that (2) medical evidence does not support Plaintiff's complaints. AR 27-29. In
11 discussing whether Plaintiff has a severe mental impairment, the ALJ notes that Plaintiff self-
12 reported to the consultative examining psychologist that he is able to "pay bills on the Internet, go
13 grocery shopping, cook, vacuum, take out the trash, and 'tr[ies] to stay busy.'" AR 28-29. The
14 consultative psychologist, Dr. Bonnie Winkleman, Psy.D., examined Plaintiff on April 24, 2013.
15 AR 340. However, at the hearing that took place on February 6, 2015, Plaintiff testified that his
16 cooking is a "can of soup;" he does not do laundry or vacuum; he goes grocery shopping with his
17 wife; he does not attend church or the movies; he no longer has any hobbies though his previous
18 hobbies were cars and photography; and that he spends "90 percent of the time" inside his
19 apartment in bed or watching TV on the couch. AR 53-54. The ALJ also writes that Plaintiff
20 testified that he could use the Internet to communicate with others, including his attorneys. AR
21 29, 54. The ALJ did not provide "specific, clear and convincing reasons" for rejecting Plaintiff's
22 testimony, but rather stated generally that his self-reports were inconsistent with his daily
23 activities. That said, the ALJ does provide "specific, clear and convincing reasons" for rejecting
24 Plaintiff's testimony based on grounds that it is unsupported by medical evidence. AR 27-28.
25 For example, the ALJ cites Plaintiff's normal "lumbar strength and tone" and "a normal range of
26 motion in the hips." AR 27. Although the court acknowledges the format of the ALJ's decision
27 lacks structure, it finds the ALJ's evaluation of Plaintiff's symptom claims is supported by
28 "specific, clear and convincing reasons." *See Molina*, 674 F.3d at 1121 ("Even when an agency

'explains its decision with 'less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned.'")

### III. CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's motion to remand (ECF No. 18) be granted for further proceedings relating only to evaluating evidence submitted to the Appeals Council following the ALJ decision.

IT IS FURTHER RECOMMENDED that the Commissioner's cross-motion to affirm (ECF Nos. 22 and 24) be denied in part and granted in part.

### IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 24, 2019

 BRENDA WEKSLER
 UNITED STATES MAGISTRATE JUDGE